Good morning, Your Honors. Nicolette Glazer appearing on behalf of Mr. Francisco-Salvador. May it please the Court. Your Honors, on August 17, 2011, Mr. Francisco-Salvador was apprehended by the Immigration Service. Only 27 days later, he was ordered removed by an immigration judge, although, as shown on the administrative record, page 75, he filled in a questionnaire in which he advised both the immigration judge and the service that he wanted time to obtain an attorney, he had a fear to return to his country of origins, he wanted to fight his removal case, and he wanted to have a private hearing. In addition to that, he had a pending application to legalize his status. Despite that, there was not a single piece of evidence that was presented by the government, and the judge never explained to Mr. Salvador that he has the right to present evidence at his hearing. Well, what about his own admission that he's not a citizen of the United States and he is a citizen of Guatemala? Why isn't that evidence? Well, Your Honor, that would be evidence if the Court does not consider the fact that Congress enacted a scheme in which it placed a burden on the government to establish alienage. Well, I don't quarrel with that, but you only have the burden of proving what's contested, and if Petitioner starts the proceedings by acknowledging, by affirmatively admitting he's not a citizen of the United States and he is a citizen of Guatemala, why is there an obligation on the government to affirmatively prove that if it's not contested? Well, the judge never asked Mr. Salvador if he's going to contest it. He placed him on the road and told him, you need to answer these questions. He never explained what a citizen is. He didn't explain what a national is. He didn't explain to him or didn't inquire whether by any chance Mr. Salvador has a derivative citizenship. The fact that he was told, are you a citizen or national of the United States, without explaining what that means to a 27-year-old, I don't believe it means that what it will mean to a lawyer. Now, the judge did not explain to Mr. Salvador that, okay, you didn't have an attorney. Now, would you like to waive it? That was not even part of the record. He was called in for a master hearing, a general hearing, because he had advised the judge that he wanted to obtain an attorney. Now, at a master hearing, he is with other people. They are not conducting it on the merits. Because Mr. Salvador did not show up with an attorney, the judge converted the master hearing into an individual hearing and decided all issues. At no time did the judge explain the process, didn't explain the burdens, didn't explain what Mr. Salvador's rights were. Now, obviously, if the judge has explained to him and explained that the government has a burden, and Mr. Salvador, when he says, no, I understand, I am just not a citizen of the United States, then that will be certainly an admission, and that will be an admission that the court will take into effect. However, before we get to that, I believe it is important to consider the specific process that has been implemented by Congress. Time and time again, an issue of Fifth Amendment is raised, and the answer is the due process is the one that has been codified. In this particular case, we are not, and Mr. Salvador is not asking for some additional process that fall under the scheme of the constitutional amendments. Now, Congress said when you start a removal hearing, there's significantly high interest involved liberty of an individual and his desire to remain in the United States. So we will allocate the burden of proof. The IJ was not at liberty to disregard that congressional command. It wasn't a question of regulation. It was a statutory scheme, the same as the specific statutory right to have an attorney. Did Mr. Salvador raise these due process issues with the board, immigration appeals? Yes, Your Honor. In his pro se notice to appeal, he specifically stated my due process rights were violated by the IJ. In his notice of appeal. That's correct. What about in his brief? Well, the pro se brief, Your Honor, it's a letter in which he says to the board, I didn't know what particular provision applied to me, but there must be something there that was applicable to me that will allow me to remain there. He was pro se. Now, the BIA has said that they could, if issues are not properly raised, they can take some reaffirmance, and that's what the government asked the BIA to do. If the court will look at the actual decision of the board, it is clear that the board did not accept the invitation of the government for some of the affirmance. In fact, it didn't even affirm or adopt the IJ's decision. It conducted a de novo review. Clearly, the board was on notice that Mr. Salvador is challenging due process because the entirety of the decision deals with that particular issue. The board went in and spoke at length, addressed the issue that there was no error, and that there was no prejudice that has been raised by the proceeding after reviewing everything. If the court would take notice, the board was aware that Mr. Salvador did not challenge voluntary departure. So there is nothing in the board's decision addressing voluntary departure. The board saw Mr. Salvador's notice to appear as specifically waiving the voluntary departure. It was there of challenging the fact that he was about to be removed. So the board certainly was on notice and took that notice and an opportunity to address those issues. So your argument is that the language that Mr. Salvador has not demonstrated any error included a resolution of these due process issues raised only in the notice of appeal but not in his brief? Well, Your Honor, the actual decision at page 3, the board says to the extent that the respondent maintained that his removal proceedings were unfair, we find that he has not demonstrated. So the issue of fairness, the Fifth Amendment, was taken by the board. And this court has said if the board has taken and addressed the issue, that issue is addressed. And then the court's review is to determine whether the board conducted proper review and made error in his decision. Now, I would respectfully ask the court to find that under the Acardi doctrine, when we have a specific regulation that go to substantial rights, such as the right to remain in the United States, the violation of the regulation by the agency must be strictly construed and be found to be a reversible error. Because as the Supreme Court has said since Acardi and U.S. v. Ceres, when there's statutory or constitutional rights that have been implemented or codified by regulation, the agency is not free to disregard those rights. And those specific regulations that were put in place, not for the orderly process of immigration proceeding, but to protect the right of the alien. Now, this is not an arriving alien. He was found in the United States, so there is a different allocation of burden of proof. And in this particular case, this court should take an approach that is a strict compliance with the regulation by the agency must be observed. If I may reserve the rest of my time for rebuttal. Okay. May it please the Court. My name is Jeffrey Bernstein, and I represent the Attorney General of the United States. And I'd like to concentrate my argument today under the assumption, assuming for purposes of argument, but certainly not conceding the point, both that the Petitioner has exhausted all of his administrative remedies, and that the immigration judge somehow erred by not ascertaining whether or not the hearing was knowing involuntary. And the question is whether or not the Petitioner has established prejudice. And the Petitioner has not established prejudice. Prejudice in this Court with respect to immigration issues is defined as there being established a reasonable possibility that the result would have changed. Are you assuming exhaustion? I'm assuming it – I am assuming solely for purpose of argument, not conceding it, but I'm assuming exhaustion. Right. Arguendo. So again, yes, the burden is on the alien to show that there is a reasonable possibility. So you're assuming arguendo exhaustion and you're assuming arguendo procedural deficiencies and denial of due process. Yes. Yes, Your Honor. And I'm happy to argue. And your position is that he can't – he's not entitled to any relief? He can't establish prejudice because there is no reasonable possibility for relief. Now, with respect to removability, because obviously we have to start with removability, because we wouldn't be here if he wasn't removable, as the government does bear the burden of proving alienage. There is evidence in the record aside from the Petitioner's concessions. There is the assertion of the immigration officer that he had the good faith belief that Mr. Francisco was both an alien, not a citizen or national of the United States, a citizen of Guatemala, and that he was removable for having entered the United States without authorization and remained in the United States without authorization. Mr. Francisco's – Francisco's testimony certainly corroborates that assertion. Any suggestion that that is insufficient proof for the government to establish alienage is – is simply not well taken. And, in fact, there's no substantial evidence. This is a – He seems to – he has a – he's married to a U.S. citizen? He alleges he's married to a United States citizen. You have to assume that, I guess, too, or do you? Oh, I don't know if we have to assume it, but let's assume it for purposes of the argument. With respect to removability, the Petitioner seems to assert that the government bears the burden with respect to that. That's not true. Government has the burden with respect to somebody who is legally present in the United States, such as a lawful permanent resident. But somebody who is illegally in the United States, the alien has the burden of proving that he is not removable. Well, we had a suggestion, though, that the government has to prove alienage, and it may have been no more than a suggestion, but we heard from counsel's argument that maybe he has a claim for derivative citizenship somehow. Now, if that – now, I heard the word derivative, I thought. We've got another case that involves derivative, but if – and I don't know where it would come from. But, you know, if we start assuming – and I understand you're not conceding it, but if we've gotten ourselves into the boat of trying to figure out what was their prejudice, what about the possibility of him proving that he's entitled to be here? There – he never made such an assertion. He conceded he was an alien. He conceded he was removable. There is proof from the immigration officer. This is the argument. But, see, the proof from the immigration officer is – I'm not sure how compelling that is, because what is he going on? How does he know? Well, the immigration officer is an officer of the United States, and he is presumed I'm an officer of the United States. That doesn't mean I know. How does he know? He's presumed to, and I believe that you do your job very well, and with – Good luck with that. I'm trying to suck up, Your Honor. So we have to believe that absent proof to the contrary, which hasn't been presented, we have to believe that his assertion is valid, and he has a good faith belief that it is, in fact, valid. So the argument we just heard was that here's a guy, he's 27. It's not like he's a little kid, but he doesn't understand this concept of citizenship. So when he answers the question without the benefit of counsel, without it all being explained to him, and that's the presumed due process violation, he answers in a way that doesn't reflect what might be the case. Now, I grant you there seems to be no evidence whatsoever submitted anyplace that suggests something to the contrary. But if we accept the assumption and we take out his response to the IJ's inquiry, what do we have that tells us he's an alien? Well, I think this is a 27-year-old – the record establishes that this is a 27-year-old individual who alleges he's been in the country since 2001, and he is also relatively familiar with the immigration process since he admitted that he has been the subject of immigration proceedings wherein he was turned around at the border or he was – he accepted voluntary departure in lieu of the institution of removal proceedings. So I think this alien, given the circumstances present in his case, must be presumed to know whether or not he is a citizen of the United States. You know, the petitioner's counsel may allege in her brief or in here that there is a through somebody, but there's got to be a reasonable possibility. We can't assume prejudice based upon speculation and conjecture, which is exactly what the petitioner presents to us in her brief. Again, with respect to removability, he had the burden. There's no evidence suggesting or much less compelling the conclusion that he's not removable as charged. Moving to the various – so he's removable. In proceedings, once you're determined to be removable, then the question is whether or not you can prove, and the alien bears the burden of proof always, to prove that there is some relief from removal, statutory or regulatory, that is available to them. Mr. Francisco, excuse me, asserts that he's entitled to three forms of relief. He asserts that he's – there's a reasonable possibility that he's entitled to asylum. I think the petitioner's brief gets it wrong as a factual matter that he alleged that he was entitled to asylum. It is true that at the beginning of immigration proceedings, when he was in custody, he asserted that he had a fear of returning to Guatemala. However, when the notice to appear was promulgated and formal removal proceedings were instituted, there is a form, and I can't remember the – I can find it in the record if the Court pleases. I think it probably would be best if I did. It's the Request for Disposition Found in Administrative Record, page 73. And this is a form that was totally prepared by the Department of Homeland Security. You'll see a Request for Disposition. Presumably based upon his assertions in his interview when he was first taken into custody, the Immigration Service checkmarked or ex-marked two boxes. One, I request a hearing. Second, I believe I face harm if I return to my country. He initialed only the first box. He did not initial the box, I believe I face harm if I return to my country. So there is absolutely no indication that he had applied for asylum. And I note as well that if his assertion that he came to the United States in 2001 is to be believed, he's not entitled to asylum. He's statutorily ineligible for asylum because the statute requires that an alien file an asylum application within one year of his entry into the United States, absent extraordinary circumstances. There's no hint of any extraordinary circumstances which would justify his failure to file within a year. He would be eligible for withholding of removal and protection pursuant to the Convention Against Torture. However, again, there's been no proffer before the immigration judge, the board, or before this Court that he can satisfy entitlements either to asylum or to any of those other forms of relief and protection that I've just discussed. The next is cancellation of removal. Cancellation of removal requires a number of prerequisites to prove. An alien must prove that he's got 10 years of continuous physical presence in the United States. He must prove that he has a qualifying relative. He can stop there because he falls just short even if you accept his date. That's correct. But I have more. I feel like I'm watching cable TV. Pocket fishermen and more. Okay. And he must prove that his qualifying relative would experience exceptional and extremely unusual harm if he was removed from the United States. As the Court points out, he would fall just short. But even if he didn't fall just short, he admits that he was he voluntarily departed the United States. And a voluntary departure from the United States in lieu of removal cuts your continuous physical presence. So obviously those voluntary departures were well after the August 17th or August 16th, 2001 date that he would have had to establish began his 10-year period. So his continual physical presence would have been cut off at that point. There's no evidence as well. I mean, I guess there is some evidence that he has a qualifying relative, but. We have no specific findings as to all these things, do we? No, because he never applied for any relief. Right. And so I'm just, if we were to assume that there was a due process violation with respect to his interference with his lack of his right to counsel and other things, can we go ahead and decide all these things on the basis of the record? Well, I think you can as a matter of. No specific findings. I think you can because I think he has not established as a matter of law that it is, that he can, I can't remember the exact phrase, that there is a reasonable possibility that he could prevail on appeal. And he also has not established, going back to the relief that I was talking about, no evidence that there's any harm, any harm of the type that would be necessary to qualify him for relief was present in this case. The Board has expounded on the requirements for the hardship. It is certainly more than the extreme hardship required for the. Well, we surely can't make that evaluation. I mean, your office is aggressive in making sure that we don't second-guess determinations with regard to hardship. I don't know that you want to invite us to try to substitute for the agency in that way. I'm not, Your Honor. All I'm saying is that the burden is extremely difficult. The broad issue of prejudice is before us, and I hear your argument. And let me ask you before you exhaust your time to shift gears just a little bit. Sure. The Board accurately observed that a call for humanitarian relief didn't properly belong in before E.O.R., the adjudication system, and it doesn't belong before us. Right. Time has passed. You've now had occasion to pick up this file. Perhaps somebody else, DHS, has looked at it. Is there any point in pursuing? While the case is pending, not much is going to be done. Is this a case that has any reasonable prospect of reexamination or the possibility of relief being granted? He's in detention. My concern here is that if we deny the petition, he's likely to be out of the country pretty quickly, and there wouldn't be a lot of time necessarily for that application to be considered. So that's why I raised the question. Is there an occasion for that possibility to be raised? Well, let me just suggest, Your Honor, that he indicated that he was aware that he was married and perhaps to a United States citizen who could have petitioned for him back in gosh, I think it was 2010 or 2011 when he had his immigration hearing. Prior to that point, he indicated that his wife had not filed an application, petitioned for a visa for him based upon that marriage. He alleged to the board in his brief that his wife had not petitioned for him, and the petition for a visa had been filed. If a petition for a visa is filed and there is action on the visa and it's positive, then the route and remedy for the petitioner is to seek to reopen his removal proceedings to inform the board that he has relief available. But until and unless somebody actually files a visa for him, much less the visa being approved, then it is entirely premature on that basis. Does that answer your question? Do you have any knowledge as to whether a visa application has been filed on his behalf? I do not know. I can only assume by reading the petitioner's opening brief and the petitioner's brief before the board that none has been filed, which causes me to be a little bit suspicious about the fact, but that is beside the point. Mr. Bernstein, I'd like to clarify one point before you finish. Is it your position that the board made sufficient findings and sufficiently considered the due process claims raised on the appeal by Mr. Salvador? No, Your Honor. We don't believe he exhausted it. We don't believe that the one-sentence due process is sufficient to alert the agency as to what he was alleging went wrong in a way that they could remedy it, and that's really the Supreme Court and this Court's case law and every other court's case law with respect to due process. You've got to alert the agency. This is not enough. Moreover, not only didn't he explain the due process allegation, when he filed his brief, all he said was I'm entitled to – I may be entitled to adjust my status. He's not entitled to adjust his status as a matter of law because there's no visa presently available to him. I see my – I'm over time. Unless the Court has any further questions, I would respectfully request that the Court affirm the decisions below and deny the appeal. Thank you very much. Thank you. Ms. Glaser. Your Honor, I will start by saying, responding to my esteemed counsel, in fact, the immigration judge and the record that the Court has is that his father had filed a petition for Mr. Salvador back in 2001. Well, I'll ask the Court to take judicial notice that 2001 was seminal year because the Life Act was passed, which will mean that if Mr. Salvador's father filed an I-130 petition, he will be grandfathered in, meaning that his illegal entry will be waived in exchange for a payment for $1,000. So Guy J., however, when he was told, yes, my dad filed a petition to fix my status, didn't ask the government to inquire, just made the observation that the petition was expired. Well, I will respectfully submit that the I-130 petition will not expire. If it was approved, it would have been placed in line because in 2001 there was a significant backlog for individuals from, as we see from the record, the government at one time believed that Mr. Salvador was from Mexico, so they tried to return him five times to Mexico, although they are alleged that he is a citizen of Guatemala. So to the extent that the petition is filed, the petition he was abiding, the Court has a record in which he put in to the officer, administrative record number 73 page, that he has a pending petition. He told Guy J. about it. Now, this Court has repeatedly said that the due process requires an immigration judge to advise an unrepresented alien of the potential relief. And I will briefly address the potential relief. First of all, the Court and the BIA has said that if an I.J. is put on notice, an individual fear returning to his country, the I.J. must inquire whether the individual would like to pursue asylum. Asylum is time-barred. However, withholding of removal and capture are not. Mr. Salvador mentioned that he is afraid. On page 73, the box has been marked saying that he fears returning. There is no initial. However, clearly, he told somebody that he was afraid because the officer would not have marked the number 2 box, which was marked. The number 3 box has not been marked. That's the first relief. The second relief is, we know, based on the record, again, Mr. Salvador wrote the record. The Court observed that he said he was born in Guatemala or he's a citizen of Guatemala. He's entitled to the Court is entitled to take those admission. But also, he says there, I am married to a U.S. citizen. I have a two-and-a-half-year-old daughter. I have a dad who has filed a petition for me. All those are qualifying relatives. Now, since his spouse is a U.S. citizen, there is an immediate visa available. Now, if the dad has filed before April 30th, he will be grandfathered in. So he will be eligible for adjustment. In addition, he will be eligible for any waiver under 212 if there are criminal issues. Of course, we don't have any records for alleged criminal records. As to cancellation of removal. Now, the government alleged that he entered in 2006. Mr. Salvador posited that he entered in August of 2001. The NTA was issued in August 17, 2011. So if Mr. Salvador entered any time before August 17, he will have 10 years continuous resident status. He had a qualifying relative. The IJ knew that his dad has filed a petition to regularize his status. And now we know that he has a spouse who is a U.S. citizen and a daughter who is a U.S. citizen. So we clearly have relief that is available to him. The court will not be able to decide and the BIA was not able to decide. But that doesn't mean that the IJ was relieved from the obligation to at least elicit and establish a record, which he has a statutory and regulatory obligation to do, to determine if there is any relief available for this individual. The government posited and says the NTA is a proof of alienage. I respectfully ask the court to find that the NTA is basically the equivalent of a complaint filed in a civil proceeding. And that particular NTA or a complaint contains only the ultimate facts and legal conclusion of the officer. In fact, we know that the officer who prepared the NTA said, based on the evidence in front of me, Mr. Salvador entered in 2006. However, the government and the IJ amended because they found that he entered in 2001. They said he is a citizen of Guatemala, yet they returned him five times to Mexico. I respectfully submit that if this court accepts the procedure or the posture that this is a civil proceeding, then akin to Rule 12, the court should consider that any legal conclusion must have something more to sustain the burden. This is nothing but a legal conclusion and they could not constitute evidence without proof of the fact that he was born, at least overseas. Now, the court has multiple times said that if the government produced a birth certificate, then there is a rebuttable presumption that the individual is an alien and thus burden shifts to him. There is nothing that has been presented. There is nothing that shows to this court that Mr. Salvador is either removable because we don't have any evidence. We don't have any evidence. That's still not true. He said he was not a citizen of the United States. He said he was a citizen of Guatemala. And it doesn't appear we have any evidence that he was wrong about that or there's any alternative to that question. Any alternative answer to that question, is there? Well, if, Your Honor, if his father is a U.S. citizen and he could claim that he was a citizen. Do we have anything in the record with regard to that? Nobody asked him. We don't know. But did he ever ask the Board of Immigration Appeals to do anything about it? Did he file a motion to reopen? I mean, right now we are dealing entirely, it sounds like, with information outside the record. We don't know where the father is. Well, that's correct. I think the question before the Court is whether there are statutory, regulatory, and constitutional violations that would require Mr. Salvador to be able to have a hearing on the merits and on the evidence before he's found removable. Anything further? Nothing. Thank you.
judges: Tunheim, Schroeder, Clifton